# IN THE SUPREME COURT OF IOWA

No. 18–0678

Filed March 22, 2019

**STATE OF IOWA,**

>   Appellee,

vs.

**CHRISTOPHER RYAN COVEL,**

>   Appellant.

_____

Appeal from the Iowa District Court for Dickinson County, David A. Lester, Judge.

A defendant challenges the district court's revocation of his deferred judgment and probation, and challenges the imposition of his prison sentence and order to pay restitution. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Pamela Wingert of Wingert Law Office, Spirit Lake, for appellant.

Thomas J. Miller, Attorney General, Genevieve Reinkoester, Assistant Attorney General, and Jon M. Martin, County Attorney, for appellee.

**WIGGINS, Justice.**

The district court revoked the defendant's deferred judgment and probation and sentenced him to serve a maximum of twenty-five years in prison and pay restitution. On appeal, we find the district court did not abuse its discretion in revoking the defendant's deferred judgment and probation or in ordering the defendant to serve the twenty-five-year sentence he would have served had the court not granted a deferred judgment. Therefore, we affirm those decisions. However, we find the district court erred in ordering the defendant to pay restitution without knowing the total amount of restitution owed, which we find is necessary to know in order to determine the defendant's reasonable ability to pay. Therefore, we reverse the part of his sentence regarding restitution and remand for resentencing regarding restitution consistent with this opinion and our opinion in *State v. Albright*, ___ N.W.2d ___ (Iowa 2019).

### I. Factual and Procedural Background.

On August 23, 2012, the defendant, Christopher Covel, babysat his one-year-old sister B.C. Covel was fourteen-years-old at the time. That evening, B.C. became very ill. On August 24, B.C. died. The autopsy revealed peritonitis due to a rectal perforation caused B.C.'s death. Her death was ruled a homicide.

In interviews with investigators, Covel admitted he stuck his finger into B.C.'s anus the day she became ill. He later admitted he had done this on multiple prior occasions as well. According to the state medical examiner, Covel's digital penetration of B.C. caused the rectal perforation, which in turn triggered the peritonitis that led to B.C.'s death.

On March 25, 2013, Covel pled guilty to sexual abuse in the second degree, a class "B" felony, in violation of Iowa Code sections 709.1(3) and 709.3(2) (2011). Covel was a youthful offender at the time, and therefore

the district court deferred sentencing and transferred supervision back to the juvenile court.

On September 28, 2015, just before Covel's eighteenth birthday, the district court sentenced Covel as an adult, pursuant to the youthful offender provisions of the Iowa Code. *See* Iowa Code § 907.3A. The district court deferred judgement and placed Covel on probation for five years. As part of his probation, the court required Covel to continue with sexual abuse and mental health treatment, maintain full-time employment or status as a full-time student, and successfully complete the program of a residential treatment facility when a bed became available.

On February 20, 2016, Covel entered the sex offender treatment program at the residential treatment facility in Sioux City. On June 12, 2017, the residential treatment facility terminated Covel from the program due to noncompliance with the facility's rules and regulations.

During Covel's 479 days in the program, he had one minor rule violation, two medium violations, and seventeen major violations. The residential treatment facility ultimately terminated Covel after residential officers found twenty-one pornographic magazines in Covel's possession. Upon termination from the residential treatment facility, Covel had not yet completed the sex offender treatment program. The residential treatment facility staff recommended to Covel's probation officer that the court reevaluate Covel's probationary status because, in their opinion, Covel was unsuitable to return to the community at that time.

On June 14, the State filed an application for revocation of Covel's probation with the district court. The district court held two probation revocation hearings. On January 9, 2018, the court held the first hearing. Covel's probation officer testified that neither she nor the supervisor at the residential treatment facility recommended the court return Covel to the

facility. The court inquired into other options outside the residential treatment facility that could be appropriate for Covel. Covel's probation officer recommended the court revoke Covel's deferred judgment and sentence Covel to a term in prison.

Covel also testified at the hearing. He testified that since pleading guilty as a juvenile, he successfully completed two sex offender treatment programs and his high school education. He also successfully completed a polygraph test as part of his treatment, and he was on the last packet of his sex offender treatment programming. Covel further testified his employers had terminated him because of illness, not poor performance. At the close of the hearing, the judge said he wanted to take judicial notice of Covel's juvenile court files and review an updated presentence investigation report (PSI) before sentencing Covel.

On April 9, the court held the second probation revocation hearing. The State asked the court to revoke Covel's probation and sentence him to twenty-five years in prison. Defense asked the court to return Covel to the residential treatment facility. After the district court reviewed all the information, it gave a detailed and thoughtful explanation as to why it was revoking Covel's deferred sentence and probation and sentencing him to twenty-five years in prison. Because Covel was a minor at the time of the crime, the court did not impose a mandatory minimum as required by the statute. Although the court was concerned about the length of time Covel would spend in prison, the court saw an opportunity for Covel to earn an early release by the parole board if Covel addressed his problems in prison.

The court then ordered Covel to pay restitution for fines, penalties, surcharges, courts costs, correctional fees, and court-appointed attorney fees. The court found Covel had a reasonable ability to pay restitution. However, at the time of sentencing, the court did not know the amount of

restitution Covel was to pay and set no amounts in the order. Covel appealed his sentence.

## II.  Issues.

On appeal, Covel raises two issues. First, he claims the district court erred in revoking his deferred judgment and probation and sentencing him to twenty-five years in prison. Second, he argues the district court erred in imposing restitution without determining his reasonable ability to pay.

## III.  Standards of Review.

We will overturn a revocation of probation only if there has been an abuse of discretion. *State v. Rogers*, 251 N.W.2d 239, 243 (Iowa 1977) (en banc). An abuse of discretion occurs when the court exercises its discretion on grounds or for reasons that are clearly untenable or unreasonable. *State v. Thompson*, 856 N.W.2d 915, 918 (Iowa 2014). We may find grounds untenable when based on an erroneous application of the law. *State v. Gordon*, 921 N.W.2d 19, 24 (Iowa 2018).

On the issue of restitution, we review the order for correction of errors at law. *State v. Klawonn*, 688 N.W.2d 271, 274 (Iowa 2004). We will reverse if the court has not properly applied the law or the court's findings lack substantial evidentiary support. *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001).

## IV.  Revocation of Covel's Deferred Judgment and Probation.

On appeal, Covel argues the district court abused its discretion by revoking his deferred judgment and probation because the court failed to recognize his capacity for reform.

A court may revoke probation if the person on probation violates the terms of the probation. *State v. Darrin*, 325 N.W.2d 110, 112 (Iowa 1982). The judge must base a revocation "on more than a simple reevaluation of

the information known by the trial judge at the time of sentencing." *Id.* at 113. A court may not revoke probation arbitrarily, capriciously, or without adequate information. *State v. Hughes*, 200 N.W.2d 559, 562 (Iowa 1972).

The district court is to apply a straightforward two-step analysis for revocation decisions. *Patterson v. State*, 294 N.W.2d 683, 684 (Iowa 1980). The first step is determining whether the person has acted in violation of one or more conditions of his or her probation. *Id.* If the court determines the person violated his or her probation, the second step is determining whether the person should be committed to prison or whether the court should take other steps to protect society and improve chances of rehabilitation. *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 479–80, 92 S. Ct. 2593, 2599 (1972));[1] *see also* Iowa Code § 908.11(4) (2018).

In the present case, Covel stipulated that he violated the rules of the residential treatment facility and thereby violated his probation. Thus, the question before the district court was whether Covel should continue with probation either in the community or at the residential treatment facility, or whether Covel should serve the sentence he would have served if not for the deferred judgment. *See* Iowa Code § 908.11(4).

The record shows the district court put a great deal of time and thought into its decision to revoke Covel's probation. The court held an initial revocation hearing at which it heard testimony from Covel and Covel's probation officer. The court inquired into alternatives to revoking probation or returning Covel to the residential treatment facility. The court then ordered an additional and updated PSI be conducted and took three months to review Covel's record, including his juvenile record outlining the State's efforts to rehabilitate him.

---

[1]Although *Morrissey* was a parole revocation case, the same principles apply to probation. *See Patterson*, 294 N.W.2d at 684.

Covel's juvenile record contained positive reports of his stable behavior and progress in juvenile sexual abuse programs as well as his completion of his high school education. However, Covel's adult record showed that once on adult probation at the residential treatment facility, he had twenty rule violations by the time of his discharge from the sex offender treatment program. The final violation that led to his discharge was his possession of twenty-one pornographic magazines, which he admitted to keeping for personal use and for selling to other residents in the sex offender treatment program. The treatment facility staff and Covel's probation officer both expressed deep concern about Covel's possession of pornography. The residential treatment facility reported,

> The level of secrecy and criminal thinking involved in Mr. Covel's most recent treatment violation is concerning. It indicates severe deficits in his internalization of and motivation to use [sex offender treatment program] skills to work towards avoiding further deviant cycles which could in turn result or progress to further victimization, especially given the added incentive of a deferred judgment.

Covel's probation officer stated in the PSI, "Please note that the sexual component of the pornography is concerning because he was heavily into pornography when this crime occurred, ultimately killing his sister sexually."

After reviewing Covel's entire file, the district court held the second revocation hearing. There, the district court judge explained at great length his decision for revoking Covel's probation, including the three overarching principles he considered in reaching Covel's sentence: retribution, rehabilitation, and restitution. The court expressed concern that Covel might reoffend. Ultimately, the judge concluded Covel's actions showed the efforts to rehabilitate Covel failed and Covel still showed propensities toward being unable to control himself even in one of the most structured environments available at the residential treatment facility.

The district court has broad discretion in determining whether probation should be continued or revoked. *See* Iowa Code § 908.11; *Darrin,* 325 N.W.2d at 113 ("The legislature has given the judge hearing the request for revocation wide discretion to practice wisdom and justice in determining whether probation should be continued."); *see also Patterson,* 294 N.W.2d at 685 (holding trial court did not err in revoking defendant's parole when the only evidence it had to consider was the violation report and no conflicting evidence was presented); *Rheuport v. State,* 238 N.W.2d 770, 772–75 (Iowa 1976) (holding trial court did not err in revoking defendant's probation when defendant was charged with another crime while on probation); *Hughes,* 200 N.W.2d at 563 (holding trial court did not err in revoking probation when it found by a preponderance of the evidence that defendant committed an armed robbery).

Based on the updated PSI and two probation revocation hearings, we find there was sufficient evidence in Covel's record for the district court to revoke Covel's probation. *See Hughes,* 200 N.W.2d at 562. The district court exercised its discretion with ample information beyond the original file used in Covel's initial proceedings. *See Darrin,* 325 N.W.2d at 113. Further, the court did not err in the sentence it imposed because it imposed the sentence that Covel would have served but for the deferred judgment, pursuant to Iowa Code section 908.11(4). *See* Iowa Code § 908.11(4) ("If the violation is established . . . and, if the imposition of sentence was deferred, [the court] may impose any sentence which might originally have been imposed.").

## V. Order of Restitution.

The district court ordered Covel to make restitution for court costs, correctional fees, and court-appointed attorney fees. The court also found

that Covel had a reasonable ability to pay restitution when it did not have the amount of restitution before it.

In *Albright,* we examined the Iowa Code provisions related to restitution. We held,

> Courts must wait to enter a final order of restitution until all items of restitution are before the court. Once the court has all the items of restitution before it, then and only then shall the court make an assessment as to the offender's reasonable ability to pay. A court should make every effort to determine an offender's financial condition as early as possible. This may require the offender filing an updated financial statement, a colloquy with the offender, or both. A court cannot impose restitution on an offender for the items subject to the offender's reasonable ability to pay if the offender does not have a reasonable ability to pay those items. Finally, any temporary, permanent, or supplemental order regarding restitution is not appealable or enforceable until the court files its final order of restitution.

*Albright,* ___ N.W.2d at ___.

Here, the district court did not have the total amount of restitution owed when it entered its order finding Covel reasonably able to pay. Therefore, the court erred, and we reverse the part of the sentence regarding restitution and remand the case for resentencing consistent with this opinion and our opinion in *Albright. See id.*

### VI. Disposition.

We affirm the district court's decision to revoke Covel's deferred judgment and probation and sentence him to twenty-five years in prison without a mandatory minimum. However, we vacate the restitution part of the sentencing order and remand the case to the district court to order restitution in a manner consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

All justices concur except McDonald, J., who takes no part.