# IN THE COURT OF APPEALS OF IOWA

No. 18-1877
Filed September 11, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DAIRRAMEY MOORE,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Clinton County, Patrick A. McElyea (trial) and Mary E. Howes (sentencing), Judges.

Dairramey Moore appeals his criminal convictions and the sentences imposed. **CONVICTIONS AFFIRMED; SENTENCES AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

Mark C. Smith, State Appellate Defender (until withdrawal), and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Mullins and May, JJ.

**MULLINS, Judge.**

Dairramey Moore appeals his convictions of intimidation with a dangerous weapon with intent and reckless use of a firearm. Moore argues (1) the evidence was insufficient to support his convictions; (2) the court failed to exercise its discretion in imposing sentence; and (3) the district court improperly ordered him to pay attorney fees, court costs, and correctional fees as restitution without first determining his reasonable ability to pay the same.

## I. Background Facts and Proceedings

In the late-evening hours of April 26, 2018, a shooting occurred at a residence in Clinton, Iowa.[1] Prior to the shooting, Moore and Zachary Broders went to the residence because they needed beer money; they knew the home to be occupied by Alan Wulf, who owed both Moore and Broders money. At roughly 11:45 p.m., the pair parked in the alley behind the residence and went to the back door of the home, which faces north. Less than a minute later, a woman, Melissa Hartman, came outside and conversed with Moore and Broders. About a minute later, Broders walked back to the alley because he thought he heard something; Moore remained with the woman at the back door. Broders then proceeded to the east side of the house to look into a window leading to the living-room area of the home to see if Wulf was inside.[2] Through the window, Broders observed multiple women and a man, but not Wulf. However, Wulf was present in the home. Broders

---

[1] The home was equipped with five surveillance cameras: one at the back door pointing north; one on the east side pointing north; two on the front of the house, one pointing south and one pointing southeast; and one on the west side of the house pointing southwest. Video footage from the surveillance system was admitted as evidence at trial.

[2] The area outside of the window was in a blind spot of the surveillance system.

also peered around the front corner of the home and glanced at the front door. Broders returned to the rear of the home and advised Moore that Wulf was not home. Moore and Broders then went to the east side of the house together to take a second look. At the same time, Hartman got in a vehicle near the alley and left the area. Broders then returned to his car and waited inside, while Moore remained on the side of the house. While in his car, Broders heard gunshots. After the shooting ceased, Broders looked up. He then observed more shots coming out of the window of the home and Moore running. Broders locked his car doors and drove away from the area. Moore fled the area on foot, running north through the backyard of the home and then westbound through the alley. The video evidence does not show anyone else fleeing the scene or approaching the east side of the home. Broders testified he never saw Moore with a firearm on the night in question. However, the video evidence shows Moore to be holding his right hand in his pocket. A police officer testified, based on his experience in law enforcement, the manner in which Moore had his hand tucked away indicated a possibility that he was carrying a weapon.

Moore testified on his own behalf. He admitted to being at the home on the night in question and acknowledged he went to the home because Wulf owed him money. He then explained that, while he was at the window on the east side of the home, he was speaking with someone through an open window, "try[ing] to negotiate" to get his money. Then, according to Moore, a man named Tango approached and started arguing with Wulf. Ultimately, "things escalated, gun fire started going, [and Moore] took off running." Moore testified Tango was not depicted in the video footage because of "the direction the angle he came in from."

Moore finally testified he was not in the possession of a weapon on the night in question.

The evidence generally shows that shots were fired to the west through and from outside the living-room window of the residence and then return shots were fired to the east through and from inside the window. Investigators found seven 9 millimeter shell casings on the ground outside of the window. Two bullet holes were found in a window on the west side of the house directly across from the window on the east side of the home. The residence located immediately to the west suffered bullet holes to its east wall. The residence located immediately to the east suffered two bullet holes and fragmentation damage to its west wall.

Moore was charged by trial information with (1) intimidation with a dangerous weapon with intent to invoke fear or anger in another, (2) going armed with intent, and (3) reckless use of a firearm. The matter proceeded to trial. Following the State's case-in-chief, Moore moved for judgment of acquittal on all counts, arguing the evidence was insufficient to show he was the shooter or possessed a weapon. The court denied the motion. Moore renewed the motion following the presentation of the evidence for the defense. A jury found him guilty of intimidation with a dangerous weapon with intent and reckless use of a firearm. The court sentenced Moore to a term of incarceration not to exceed ten years with a mandatory minimum of five years on count one and a term of incarceration not to exceed two years on count two, to be served concurrently. The court ordered Moore to pay attorney fees, court costs, and correctional fees as restitution. Moore appeals.

## II.    Analysis

### A.    Sufficiency of the Evidence

Moore challenges the sufficiency of the evidence supporting his convictions. Challenges to the sufficiency of the evidence are reviewed for corrections of errors at law. *State v. Albright*, 925 N.W.2d 144, 150 (Iowa 2019). The court views "the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (quoting *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017)). All evidence is considered, not just that of an inculpatory nature. *See Huser*, 894 N.W.2d at 490. "[W]e will uphold a verdict if substantial evidence supports it." *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)). "Evidence is substantial if, 'when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *Ramirez*, 895 N.W.2d at 890). Evidence is not rendered insubstantial merely because it might support a different conclusion; the only question is whether the evidence supports the finding actually made. *See Brokaw v. Winfield-Mt. Union Cmty. Sch. Dist.*, 788 N.W.2d 386, 393 (Iowa 2010). In considering a sufficiency-of-the-evidence challenge, "[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (quoting *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005)).

The State bears the burden of proving every element of a charged offense. *State v. Armstrong*, 787 N.W.2d 472, 475 (Iowa Ct. App. 2010). Moore does not

challenge the marshalling instructions employed at trial for the charged crimes.  As such, the instructions serve as the law of the case for purposes of reviewing the sufficiency of the evidence.  *See State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018).  As to count one, the jury was instructed the State was required to prove, among other things, that Moore shot a firearm.  *See* Iowa Code § 708.6 (2018).  As to count three, the jury was similarly instructed the State was required to prove, among other elements, that Moore discharged a firearm.  *See id.* § 724.30.

Moore challenges the State's establishment of both elements.  He maintains there was no evidence he possessed a firearm and there was no testimony by anyone who actually saw him discharge a firearm.  As to the former, the video evidence definitively shows Moore to be tucking away his hand in his pocket at all times.  One officer, based on his experience in law enforcement, testified this to be an indication that Moore was concealing a weapon.  Moore also contends Broder's testimony that it was "cold" outside on the night in question dispels any conclusion that he was concealing a weapon, because his hand was in his pocket simply because he was cold.  However, the jury could have easily rejected such a notion given the facts that Moore did not put both of his hands in his pockets and Broders was wearing a short-sleeve shirt.  Next, Moore maintains the video evidence shows that both of his hands were empty when he fled the scene and points out that no firearm was located when he fled the scene.  We disagree with Moore's interpretation of the video footage; it does not definitively show his right hand to be empty.  Viewing the evidence in the light most favorable to the State, we find a rational jury could conclude Moore had a firearm on his person.

Moore next complains that no witness testified they actually saw him discharge a firearm and his convictions were therefore impermissibly based upon his mere presence at the scene. While we acknowledge there was no direct evidence that Moore was the shooter, the evidence was undisputed that someone fired into the home from outside the window. The jury was expressly instructed that "[t]he law makes no distinction between direct evidence [and] circumstantial evidence." *Accord State v. Kelso-Christy*, 911 N.W.2d 663, 668 (Iowa 2018) ("Direct and circumstantial evidence are equally probative." (citation omitted)). Viewing the video evidence in the light most favorable to the State, it shows that Moore was the only person on the east side of the home when shots were fired into the home therefrom. The only evidence refuting the position that Moore was the shooter was Moore's self-serving testimony that this Tango character appeared, things escalated, and shots were fired. The jury's conclusion that Moore was the shooter was necessarily based on the circumstantial evidence and the jury's credibility determinations, which we do not disturb in a sufficiency-of-the-evidence review. *See Musser*, 721 N.W.2d at 761.

Viewing the evidence in the light most favorable to the State, as we must, we conclude the evidence was sufficient to convince a rational jury that Moore was the shooter on the night in question. We therefore affirm Moore's convictions of intimidation with a dangerous weapon with intent and reckless use of a firearm.

B.     Sentencing

At the time of sentencing, the State requested imposition of a term of incarceration not to exceed ten years on count one. The State also pointed out that count one amounted to a forcible felony and incarceration was required under

Iowa Code section 907.3. The State also noted that because a dangerous weapon was used, section 902.7 required a mandatory minimum sentence of five years. The court requested defense counsel's recommendation, to which counsel responded, "Well, we don't have too much wiggle room here." The court replied, "No." Defense counsel then discussed potentially mitigating circumstances, highlighting Moore's status as a veteran and his mental-health afflictions. The court explained:

> I've reviewed the presentence investigation report, and as I mentioned, you were found guilty of these counts by a trial by jury. And the law, as the attorneys commented, requires incarceration because it's a forcible felony under the code section done by the legislature.
>
> And, also, there is a reason for that, which is it was a dangerous situation, and so the safety of the community in a dangerous situation would also warrant incarceration. So under Count I, under 708.6, intimidation with a dangerous weapon with intent, a Class C felony, the Court sentences you to an indetermin[ate] term of ten years . . . .
>
> . . . . And based on a weapon being used, under 902.7, the Court sentences you to a mandatory minimum of five years before you're eligible for parole or discharge.

Moore appeals his sentence on count one, arguing the district court failed to exercise its discretion in imposing sentence. He maintains the court was not aware of its discretion to reduce the minimum sentence contained in Iowa Code section 902.7 and it consequently failed to exercise that discretion. Under the circumstances of the case, section 902.7 required that Moore "serve a minimum of five years of the sentence imposed by law." However, section 901.10(1) provides: "A court sentencing a person for the person's first conviction under section . . . 902.7 may, at its discretion, sentence the person to a term less than

provided by the statute if mitigating circumstances exist and those circumstances are stated specifically in the record."

"When a sentencing court has discretion, it must exercise that discretion." *State v. Ayers*, 590 N.W.2d 25, 27 (Iowa 1999). A failure to do so requires resentencing. *Id.* However, "sentencing decisions of the district court are cloaked with a strong presumption in their favor" and defendants have "an affirmative duty to provide a record showing the district court was unaware of its discretion to apply a lesser sentence and for that reason failed to exercise its discretion." *Id.* at 29. If we are unable to determine "from the record whether the sentencing court was aware it had discretion to apply section 901.10," there is "a presumption the court declined to apply section 901.10 and thus properly exercised its discretion in sentencing the defendant." *Id.* (discussing *State v. Russian*, 441 N.W.2d 374 (Iowa 1989)).

When asked for his sentencing recommendation, defense counsel responded, "Well, we don't have too much wiggle room here." The court replied, "No." The court and counsel could have been referring to the fact that the court was statutorily required to impose an indeterminate term of incarceration not to exceed ten years; there was *no* wiggle room as to whether the sentence could be suspended. *See* Iowa Code §§ 708.6 (classifying the crime as a class "C" felony), 902.9(1)(d) (requiring a class "C" felon to be "confined for no more than ten years"), 907.3 (prohibiting the suspension of a sentence for a forcible felony); *State v. Lyke*, No. 16-1473, 2017 WL 3067421, at *3 (Iowa Ct. App. July 19, 2017) (noting conviction of intimidation with a dangerous weapon "necessarily admit[s] to the facts necessary to impose the sentencing enhancement" contained in section

902.7); *State v. Pullman*, No. 09-1897, 2011 WL 441396, at *4 (Iowa Ct. App. Feb. 9, 2011) (classifying intimidation with a dangerous weapon as a forcible felony).

The only "wiggle room" was the possibility of the court reducing the mandatory minimum in section 902.7 by application of section 901.10. Defense counsel presented facts concerning Moore's veteran status and mental health which could only have been considered in mitigation under section 901.10 if the court chose to exercise its discretion to reduce the mandatory minimum. "The sentencing court, however, is generally not required to give its reasons for rejecting particular sentencing options." *State v. Thomas*, 547 N.W.2d 223, 225 (Iowa 1996). The court explained its reasons for imposition of its sentence: dangerous situation, safety of the community, and use of a weapon.

On this record, we are unable to say the district court was unaware it had discretion to apply section 901.10. As such, there is "a presumption the court declined to apply section 901.10 and thus properly exercised its discretion in sentencing the defendant." *Ayers*, 590 N.W.2d at 29. We affirm the sentence imposed on count one.

C.     Restitution

In its sentencing order, the court ordered Moore to pay attorney fees, court costs, and correctional fees as restitution. Moore complains the court improperly did so without first determining his reasonable ability to pay and before the amounts for court costs and correctional fees were known. The State argues Moore's challenge is premature because there is no final order of restitution. We disagree. While the supreme court has stated "[r]estitution orders entered by the court prior to the final order are not appealable as final orders," *Albright*, 925

N.W.2d at 161, both of Iowa's appellate courts have frequently vacated restitution-related orders absent a final restitution order.[3]

The district court may only order restitution for court costs including correctional fees and court-appointed attorney fees "to the extent that the offender is reasonably able to pay." Iowa Code § 910.2(1)(a)(3), (4). Here, the district court made no determination of Moore's reasonable ability to pay these items of restitution before ordering him to pay the same. Further, the amounts of restitution for court costs including correctional fees were yet to be determined. The imposition of these items of restitution "must await the filing of a final restitution plan and a determination of [Moore]'s ability to pay." *See Smeltser*, 2019 WL 2144683, at *1. Applying *Albright*, we vacate the court's order for restitution and remand the matter to the district court for receipt of a final restitution plan and a determination of Moore's reasonable ability to pay.

### III.    Conclusion

We affirm Moore's convictions and the sentence imposed on count one. We vacate the restitution provisions of the sentencing order and remand the matter to

---

[3] *See, e.g.*, *State v. Headley*, 926 N.W.2d 545, 549, 553 (Iowa 2019); *State v. McMurry*, 925 N.W.2d 592, 601 (Iowa 2019); *State v. Petty*, 925 N.W.2d 190, 194, 197 (Iowa 2019); *State v. Covel*, 925 N.W.2d 183, 187–89 (Iowa 2019); *Albright*, 925 N.W.2d at 162; *State v. Werner*, No. 18-1069, 2019 WL 3714822, at *3 (Iowa Ct. App. Aug. 7, 2019); *State v. Lester*, No. 18-0524, 2019 WL 2872322, at *3 (Iowa Ct. App. July 3, 2019); *State v. Garvin*, No. 18-1258, 2019 WL 2871423, at *2 (Iowa Ct. App. July 3, 2019); *State v. Rankin*, No. 18-1033, 2019 WL 2372142, at *1 (Iowa Ct. App. June 5, 2019); *State v. Meyers*, No. 18-1472, 2019 WL 2371958, at *1 (Iowa Ct. App. June 5, 2019); *State v. Maresch*, No. 18-1296, 2019 WL 2151674, at *1 (Iowa Ct. App. May 15, 2019); *State v. Rawls*, No. 18-0882, 2019 WL 2145722, at *2 (Iowa Ct. App. May 15, 2019); *State v. Northern*, No.18-1634, 2019 WL 2144773, at *1–2 (Iowa Ct. App. May 15, 2019); *State v. Smeltser*, No. 18-0998, 2019 WL 2144683, at *1 (Iowa Ct. App. May 15, 2019); *State v. Singleton*, No. 18-0397, 2019 WL 1494641, at *3 (Iowa Ct. App. Apr. 3, 2019). *But see State v. Levy*, No. 18-1089, 2019 WL 3317334, at *2 (Iowa Ct. App. July 24, 2019).

the district court for receipt of a final restitution plan and a determination of Moore's reasonable ability to pay.

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**