# IN THE COURT OF APPEALS OF IOWA

No. 18-1857
Filed March 4, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MARIANA T. LESNIC,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Iowa County, Andrew B. Chappell, Judge.

Mariana Lesnic appeals her conviction, sentence, and judgment following a jury trial and verdict. **CONVICTION AFFIRMED; SENTENCE VACATED IN PART, REVERSED IN PART, AND REMANDED.**

Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Heard by Bower, C.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

A jury found Mariana Lesnic guilty of murder in the first degree. Lesnic appeals her conviction, sentence, and judgment. On appeal, Lesnic alleges the district court erred by (1) failing to suspend proceedings and order another competency evaluation under Iowa Code chapter 812 (2018); (2) concluding Lesnic was competent to represent herself; and (3) failing to determine Lesnic's reasonable ability to pay restitution.

## I. Background

On September 6, 2017, Lesnic called 911 and reported that she had shot a man at a rest area on Interstate 80. Upon arrival, police found Lesnic at the rest area. Officers searched Lesnic's purse and found a loaded handgun. Lesnic told the police they would find the victim in a white semi-truck at the rest area and pointed the officers to the area where it was parked. Officers identified the white semi-truck and observed a man lying on the floor of the truck's sleeper cabin. Police entered the truck and discovered that the man was dead. They identified the man as Ernest Kummer. Later investigation revealed Kummer's death was caused by three gunshot wounds to the head.

Three days after the shooting, Lesnic was charged with first-degree murder and an attorney was appointed to represent her. Lesnic filed a letter with the clerk of court requesting that her court-appointed attorney withdraw from the case and that Lesnic be allowed to represent herself. Attorney Eric Tindal was appointed to represent Lesnic for the purpose of her request to proceed as a self-represented party.

Tindal filed a motion for competency evaluation. At the hearing on the motion, Tindal expressed concern over Lesnic's competency to stand trial and to represent herself. The court ordered a competency evaluation, and Lesnic was evaluated by Dr. Abraham Assad at the Iowa Medical and Classification Center. After evaluating Lesnic and reviewing police records, Dr. Assad concluded Lesnic was both competent to stand trial and competent to waive her right to counsel. Dr. Assad noted Lesnic did not appear to be suffering from any mental illness, but she did have a history of symptoms consistent with adjustment disorder with anxiety and declined to discuss her personal history or current mental health in detail.

Regarding Lesnic's ability to represent herself, Dr. Assad noted Lesnic identified Tindal as her attorney but did not like his "approach" or "logic" regarding her case. In the report, Dr. Assad explained that, while Lesnic understood the roles of the various actors in the litigation process, she declined to explain why she did not want representation and did not appear to understand how to present a defense. Dr. Assad speculated that Lesnic's unwillingness to talk about her mental health stemmed from her upbringing in another country, stating the belief that the culture of the region tended to stigmatize mental illness.

At the competency hearing, the only evidence submitted was Dr. Assad's report. The trial court and the State questioned Lesnic at length about her understanding of the charges against her, court procedure, and the risks associated with proceeding without counsel. Lesnic acknowledged she did not understand the rules of procedure or the rules of evidence but insisted she wanted to represent herself. The district court found Lesnic knowingly and intelligently accepted the risks of self-representation, but it nonetheless appointed attorney

Trevor Andersen as standby counsel to assist Lesnic with procedural and evidentiary issues and to answer questions if Lesnic had any.

Attorney Andersen raised concerns about Lesnic's competency at a case management conference several weeks before trial. Andersen informed the trial court that he had reviewed interview materials that were provided by the State as part of the discovery process. The interview materials included statements by Lesnic's ex-husband, son, and ex-boyfriend that they believed Lesnic had "some type of paranoid delusional disorder such as schizophrenia, something of that nature, that has gone undetected" since the early 2000s. Lesnic told the court those statements were "just the opinion of the people that I have no communication with," and that they did not change the substance of what she told Dr. Assad. The trial court concluded the statements in the interviews did not warrant another competency hearing.

The matter proceeded to trial. Lesnic did not give an opening statement. She did not present any evidence beyond her own testimony, did not object to any of the State's evidence or exhibits, and only asked a total of approximately thirty questions of the fifteen witnesses called by the State. She gave only a brief closing statement. She did not object to or comment on any of the proposed jury instructions and did not file any post-trial motions.

Lesnic was found guilty of first-degree murder. The district court sentenced her to a mandatory term of life in prison without parole and ordered her to pay $150,000.00 to Kummer's family, $4768.23 to the Crime Victim Assistance Program, and $2151.13 to the Iowa County Sheriff. Lesnic appeals.

## II.	Standard of Review

"We review whether a trial court should have ordered a competency hearing de novo." *State v. Einfeldt*, 914 N.W.2d 773, 778 (Iowa 2018). "Our task on our de novo review is to examine the totality of the circumstances to determine if, at the relevant time, a substantial question of the applicant's competency reasonably appeared." *Jones v. State*, 479 N.W.2d 265, 270 (Iowa 1991).

"On the issue of restitution, we review the order for correction of errors at law." *State v. Covel*, 925 N.W.2d 183, 187 (Iowa 2019). "We will reverse if the court has not properly applied the law or the court's findings lack substantial evidentiary support." *Id.*

## III.	Discussion

### A.	Competence to Stand Trial

Lesnic argues the trial court erred by failing to halt proceedings and order another competency evaluation following the case management conference held several weeks before trial. Alternatively, Lesnic argues the trial court should have ordered another competency hearing after trial but before sentencing. Criminal conviction of an incompetent defendant violates that defendant's due process rights under the United States Constitution. *Einfeldt*, 914 N.W.2d at 778 (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966)). Criminal defendants cannot waive the competency requirement. *Pate*, 383 U.S. at 384. "[D]ue process requires a threshold hearing to be held to determine if there is sufficient doubt regarding the defendant's mental capacity to show a need for further evaluation." *Einfeldt*, 914 N.W.2d at 779 (citing *Drope v. Missouri*, 420 U.S. 162, 172 (1975)). "Even when a defendant is competent at the commencement of his trial, a trial court must

always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Drope*, 420 U.S. at 181.

Iowa Code chapter 812 implements the Supreme Court's due process requirements to evaluate competency:

> If at any stage of a criminal proceeding the defendant or the defendant's attorney, upon application to the court, alleges specific facts showing that the defendant is suffering from a mental disorder which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense, the court shall suspend further proceedings and determine if probable cause exists to sustain the allegations. The applicant has the burden of establishing probable cause. The court may on its own motion schedule a hearing to determine probable cause if the defendant or defendant's attorney has failed or refused to make an application under this section and the court finds that there are specific facts showing that a hearing should be held on that question.

Iowa Code § 812.3(1).

"As a general rule, a competency hearing is required if the 'record contains information from which a reasonable person would believe a substantial question of the defendant's competency exists.'" *Jones v. State*, 479 N.W.2d 265, 270 (Iowa 1991) (quoting *State v. Kempf*, 282 N.W.2d 704, 706 (Iowa 1979)). We consider "(1) the defendant's irrational behavior, (2) any demeanor at the trial that suggests a competency problem, and (3) any prior medical opinion on the defendant's competency to stand trial." *State v. Edwards*, 507 N.W.2d 393, 395 (Iowa 1993).

Lesnic first argues the trial court should have halted proceedings and ordered another competency hearing when information was presented that members of Lesnic's family believed Lesnic has had an undiagnosed mental

disorder such as schizophrenia since the early 2000s. We disagree. None of the family members who gave statements were medical professionals, and the only medical evaluation on record contradicts their claims.[1] Even if their statements were evidence of a history of severe mental illness, "a past history of mental illness, without more, is insufficient to trigger a competency hearing under Iowa Code section 812.3 or due process." *Einfeldt*, 914 N.W.2d at 783 n.3. We conclude the statements described to the court during the case management conference did not create probable cause to suspend proceedings and order another competency evaluation.

Alternatively, Lesnic argues the trial court erred by not ordering another competency hearing after trial but before sentencing. Lesnic supports this argument by pointing to her "abnormal" behavior during her self-representation, which she contends demonstrates "apparent indicia of incompetency" requiring the trial court to halt proceedings and order another competency evaluation before sentencing. *See* Iowa R. Crim. Pro. 2.23(3)(c) ("If it reasonably appears to the court that the defendant is suffering from a mental disorder which prevents the defendant from appreciating or understanding the nature of the proceedings or effectively assisting defendant's counsel, judgment shall not be immediately entered and the defendant's mental competency shall be determined according to the procedures described in Iowa Code sections 812.3 through 812.5.").

---

[1] In the competency evaluation report, Dr. Assad noted that Lesnic had been diagnosed with anxiety previously and had been prescribed medication for her condition. The fact that Lesnic previously sought mental-health treatment when needed supports the notion that Lesnic had insight into her own mental health and supports the trial court's refusal to order a second competency evaluation based on unsubstantiated opinions of others.

While it is true that Lesnic's self-representation was less effective than representation by counsel may have been, that is not the focus of the competency inquiry in regard to Lesnic's competence to stand trial. "[T]he ultimate question of competency facing the judge [is] whether the defendant is prevented from 'appreciating the charge, understanding the proceedings, or assisting effectively in the defense.'" *Einfeldt*, 914 N.W.2d at 791 (quoting Iowa Code § 812.3(1)). Applying the factors detailed above, we first note that the only medical opinion on record is Dr. Assad's report finding Lesnic was competent to stand trial and to waive her right to counsel. Additionally, the record shows Lesnic conducted herself professionally during trial. In denying the State's request to have Lesnic wear a security belt during trial, the trial court noted that Lesnic's "behavior has been exemplary" and no handcuffs or shackles would be necessary if Lesnic "continue[d] to behave in the professional manner" she had demonstrated up to that point. Both factors weigh against finding probable cause existed to order another competency hearing.

The last factor to consider is Lesnic's conduct during trial. While the record supports the conclusion Lesnic did not want help from counsel, the record does not support the conclusion that she had a mental disorder that prevented her from understanding the proceedings. The record shows Lesnic consulted with standby counsel regarding preemptory strikes. While Lesnic asked few questions of the State's witnesses, the questions she did ask were pertinent to the information raised by the witnesses during direct examination. Additionally, Lesnic's own testimony presented her view of the facts in a logical manner. On our de novo

review, we conclude the trial court did not err by not scheduling a competency hearing sua sponte.

## B.  Competence to Proceed Pro Se

Lesnic next argues the trial court erred by failing to properly investigate whether Lesnic was competent to engage in self-representation. She argues (1) the initial investigation was insufficient and (2) the information discussed during the case management conference and Lesnic's self-representation at trial demonstrate she "lacked the mental capacity to conduct a defense without counsel's representation." Lesnic requests this case be remanded to the trial court for a new trial. Alternatively, Lesnic requests that the case be remanded to the trial court for a full investigation and hearing on whether Lesnic had a mental-health issue that prevented her from being competent to represent herself and, if found incompetent to engage in self-representation, that a new trial be granted.

A criminal defendant has the right to self-representation under the Sixth and Fourteenth Amendments to the United States Constitution. *Faretta v. California*, 422 U.S. 806, 807 (1975); *see* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."); *id.* amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law."). However, a state may limit a criminal defendant's self-representation right "on the ground that the defendant lacks the mental capacity to conduct his trial defense unless represented." *Indiana v. Edwards*, 554 U.S. 164, 174 (2008); *see also State v. Jason*, 779 N.W.2d 66, 74 (Iowa Ct. App. 2009) ("When a trial court is presented with a mentally ill or mentally incapacitated defendant who, having been found competent to stand trial,

elects to represent himself, the trial court also must ascertain whether the defendant is, in fact, competent to conduct the trial proceedings without the assistance of counsel." (citations omitted)). A state may only "insist upon representation" when a defendant "suffer[s] from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Edwards*, 554 U.S. at 178. The overriding question in this inquiry is whether Lesnic received a fair trial. *Jason*, 779 N.W.2d at 75.

Lesnic first argues the trial court's competency inquiry was insufficient, as evidenced by Lesnic's inconsistent or misleading statements about her history of mental-health treatment and medication. We disagree. In its order directing Lesnic to undergo a psychiatric evaluation, the trial court requested the evaluator "determine whether [Lesnic] is competent to represent herself under the standard set out in *Indiana v. Edwards*." Dr. Assad assessed Lesnic's capacity to waive her right to counsel and engage in self-representation at length and found she was competent to do so. We once again note Dr. Assad's evaluation is the only medical evidence on record regarding Lesnic's mental health and capacity for self-representation. Dr. Assad noted Lesnic had given inconsistent statements about her history of mental illness and medication previously and was guarded about her personal history. In noting such details, Dr. Assad explained that "individuals can become guarded for numerous reasons unrelated to mental illness" and her guardedness with individuals associated with the legal system might be attributable to her cultural upbringing.

At the competency hearing, the trial court asked Lesnic extensive questions about her understanding of court procedure and her ability to represent herself, and cautioned her about the dangers of doing so:

> THE COURT: Before I ask you how you wish to proceed, I feel obligated to tell you that you would be far better defended by a trained lawyer than you would be by yourself. There's an old adage or an old saying that even a lawyer who represents himself has a fool for a client. And you're not a lawyer. You don't appear to understand the law related to the charge that is made against you. You acknowledge you don't understand the rules. And I'm not entirely convinced you understand the limitations—how limited my assistance will be because I can't assist you . . . as the Court.
> LESNIC: I understand.
> COURT: You're not familiar with the law, with court procedure, and certainly with the rules of evidence. I would strongly urge you to not try to represent yourself. Do you understand that?
> LESNIC: I understand.
> COURT: In light of the penalty that you might suffer if you were found guilty and all the difficulties that I've just described in representing yourself, is it still your desire to represent yourself and give up your right to be represented by a lawyer?
> LESNIC: I understand.
> THE COURT: It is still your desire, knowing all that—
> LESNIC: It still is. It still is wanting to represent myself please.

On our de novo review, we conclude the trial court adequately investigated Lesnic's competency to engage in self-representation and did not err in finding Lesnic competent to waive her right to counsel and represent herself following the competency hearing.

Lesnic next argues evidence discussed at the case management conference and Lesnic's conduct during trial demonstrates Lesnic was incompetent to represent herself and the trial court erred by failing to order another competency hearing. In regard to the information discussed at the case management conference, we again note none of the individuals who gave statements were medical professions. Furthermore, it is unknown what basis there

was for their opinions or what motives they may have had to give such opinions. The motives of an ex-husband and ex-boyfriend are questionable, especially when Lesnic herself asserted that she had not had contact with the persons for a long time. Their lay opinions are insufficient to establish Lesnic suffered from a "severe mental illness" that prevented her from being able to represent herself in light of Dr. Assad's evaluation finding Lesnic did not suffer from a mental illness.

We similarly conclude Lesnic's self-representation at trial was insufficient to demonstrate she had a severe mental illness. In support of her argument, Lesnic cites the same facts—not asking any questions during voir dire and only a few questions on cross-examination, not making any objections or motions, and her brief closing statement—cited in her argument regarding competency to stand trial. Essentially, Lesnic argues that, because she did not do a very good job of representing herself, she must not have been competent to represent herself. Accepting such an argument would essentially allow all self-represented parties at least two trials because it is almost a certainty that a self-represented defendant will not do nearly as good a job of defending a case as an attorney would do. That is why poor trial skills is not the standard for finding incompetence to engage in self-representation. For the purpose of the *Edwards* inquiry, "the issue to be decided . . . is not whether the defendant lacked the technical legal skill or knowledge to conduct the trial proceedings effectively without counsel." *Jason*, 779 N.W.2d at 76 n.2 (citation omitted); *see also Faretta*, 422 U.S. at 834 ("[A]lthough [the defendant] may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" (quoting *Illinois v. Allen*, 397 U.S. 337, 350–51 (1970)

(Brennan, J., concurring))). "Rather, the determination of [the defendant's] competence or lack thereof must be predicated solely on his ability to 'carry out the basic tasks needed to present his own defense without the help of counsel'; notwithstanding any mental incapacity or impairment serious enough to call that ability into question." *Jason*, 779 N.W.2d at 76 n.2 (quoting *Edwards*, 554 U.S. at 175–76). Lesnic had standby counsel available to her throughout trial; that she chose to avail herself of counsel's help only once despite her self-admitted unfamiliarity with court procedures does not demonstrate she suffered from mental illness sufficient to call her ability to engage in self-representation into question.

The trial court is generally in the best position "to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Edwards*, 554 U.S. at 177. On our de novo review and in light of the overriding question of whether Lesnic received a fair trial, we conclude the trial court did not err in finding Lesnic competent to represent herself. We further conclude Lesnic's conduct during trial did not create a reasonable appearance that she "suffer[ed] from a mental disorder which prevents [her] from appreciating or understanding the nature of the proceedings." Iowa R. Crim. P. 2.23(3)(c).

## IV.     Restitution

Both Lesnic and the State agree the restitution part of the trial court's order should be vacated and remanded because the trial court did not know what the final amount of restitution was when it ordered Lesnic to pay court costs. Lesnic also argues the trial court erred by not assessing her reasonable ability to pay costs before ordering payment.

The Iowa Supreme Court recently outlined the proper procedure for ordering restitution:

> Courts must wait to enter a final order of restitution until all items of restitution are before the court. Once the court has all the items of restitution before it, then and only then shall the court make an assessment as to the offender's reasonable ability to pay. A court should make every effort to determine an offender's financial condition as early as possible. This may require the offender filing an updated financial statement, a colloquy with the offender, or both. A court cannot impose restitution on an offender for the items subject to the offender's reasonable ability to pay if the offender does not have a reasonable ability to pay those items.

*See State v. Albright*, 925 N.W.2d 144, 162 (Iowa 2019). Applying *Albright*, we vacate the restitution part of the sentencing order and remand the case to the trial court for completion of a final restitution order and a subsequent determination of Lesnic's reasonable ability to pay.

**CONVICTION AFFIRMED; SENTENCE VACATED IN PART, REVERSED IN PART, AND REMANDED.**