# IN THE COURT OF APPEALS OF IOWA

No. 23-1754
Filed October 16, 2024

**WILLIE JERMAINE TAYLOR Sr.,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

The applicant appeals the denial of his application for postconviction relief and the revocation of his probation. **AFFIRMED.**

Jessica Maffitt of Benzoni & Maffitt Law Office, P.L.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee State.

Considered by Greer, P.J., and Ahlers and Badding, JJ.

**GREER, Presiding Judge.**

Willie Jermaine Taylor Sr. appeals the denial of his application for postconviction relief (PCR). He argues his trial counsel was ineffective by allowing him to enter a guilty plea while under duress and that his counsel gave him inaccurate advice related to the ramifications of the plea agreement. Additionally, Taylor claims that the probation-revocation court abused its discretion by revoking his probation and requiring him to serve the sixty-year sentence originally imposed. We affirm the sentencing decision of the probation-revocation court and the denial of Taylor's application for PCR.

**I. Background Facts and Proceedings.**

In mid-2020, Taylor faced a number of different charges in three separate cases stemming from his actions over several months. On June 1, Taylor was charged with robbery in the first degree in case number AGCR337485. On June 11, Taylor was charged with theft in the first degree, criminal mischief in the first degree, criminal mischief in the second degree, and burglary in the third degree in case number FECR338247. The State also sought an habitual offender enhancement. On June 12, the State charged Taylor with a burglary in the second degree, child endangerment, and a criminal mischief in the third degree in case number FECR336961.

One court-appointed attorney[1] represented Taylor on all three cases. Another court-appointed attorney represented him in a later probation-revocation matter arising from the three cases. Taylor's trial counsel negotiated a universal

---

[1] We refer to this attorney as "trial counsel."

plea agreement related to all of the charges. Based on the potential sentences related to the various charges, Taylor was facing a maximum of 104 years of incarceration with a minimum confinement of 32.5 years. Even under the proposed plea agreement, he still faced a significant sentence if he violated its terms and was ordered to serve the sentences. Taylor entered into the plea agreement, which included the following language:

> In FECR338247, Defendant will plead to all four counts as a habitual offender. In AGCR337485, Defendant will plead guilty to the amended charge of Aggravated Theft. State will dismiss FECR336961 and any accompanying simple misdemeanors. Parties will jointly recommend all four habitual offender counts run consecutive and the aggravated theft charge concurrent to those counts for a total sentence of sixty years with a mandatory minimum of twelve years. The parties will jointly recommend the sentence be suspended and Defendant placed on probation with the requirement that he complete Bridges of Iowa or the Salvation Army Program, if eligible.

The district court accepted the plea agreement and imposed the recommended sentence. Taylor did not file a motion in arrest of judgment or indicate to the court he wanted to withdraw his plea.

After participating for about a month, on October 6, Taylor left the court-ordered Salvation Army treatment program without permission and against the conditions of probation imposed under the plea agreement. Taylor told his probation officer that he left the treatment program due to medical issues, stemming from gunshot wounds he had sustained unrelated to these charges. Because he left against the probation officer's instructions and the court order, a report of violation of probation was filed with the court. A second report of probation violation followed because Taylor had not returned to the Salvation Army treatment center and he engaged in additional criminal behavior in two occasions.

He was party to a car accident where he was charged with driving while barred and leaving the scene of an accident. And after that Taylor was involved in yet another accident and charged with driving while barred. After a probation-revocation hearing, the court revoked Taylor's probation, requiring Taylor to serve the originally imposed sixty-year prison sentence with a twelve-year mandatory minimum.

Taylor filed a direct appeal, but our supreme court dismissed for various reasons including that probation-revocation orders could only be challenged through a PCR proceeding. Next, Taylor applied for PCR and, after a hearing, the court denied the application. He now appeals.

## II.  Standard of Review.

We generally review PCR rulings for correction of errors at law. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). "However, when the applicant asserts claims of a constitutional nature, our review is de novo. Thus, we review claims of ineffective assistance of counsel de novo." *Id.* (citation omitted).

We review decisions to revoke probation for an abuse of discretion. *State v. Covel*, 925 N.W.2d 183, 187 (Iowa 2019).

## III.  Discussion.

Taylor frames his challenges as: (1) he was provided ineffective assistance of counsel regarding his guilty pleas and (2) the probation-revocation court abused its discretion by revoking his probation and requiring him to serve the originally imposed sixty-year sentence. Both claims were raised in a PCR proceeding below. As a result, error is preserved. We address each claim separately.

**A. Ineffective Assistance of Counsel.**

Generally, to establish ineffective assistance of counsel, Taylor must prove both that (1) his trial counsel performed outside the bounds of reasonable competence and (2) prejudice, meaning but for counsel's unprofessional errors, there would be a reasonable probability of a different outcome at trial. *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). Because Taylor claims ineffective assistance after pleading guilty, to prove prejudice, he "must establish the guilty plea would not have been entered but for the breach of duty by counsel." *See Castro v. State*, 795 N.W.2d 789, 793 (Iowa 2011); *cf. id.* at 792–93 (recognizing that while entering a guilty plea "waives all defenses and objections to the criminal proceedings," a claim of ineffective assistance of counsel survives when "the pre-plea ineffective assistance of counsel rendered the plea involuntary or unintelligent"). If Taylor fails to prove either prong of the *Strickland* analysis, the entire claim fails*. See State v. Lorenzo Baltazar*, 935 N.W.2d 862, 868 (Iowa 2019) ("Failure to prove either prong is fatal to an ineffective-assistance-of-counsel claim.").

To support his ineffective-assistance-of-counsel claim, Taylor asserts two theories: (1) that counsel was ineffective in allowing him to enter a guilty plea while he was under significant duress and (2) that counsel provided inaccurate advice regarding the plea agreement.

**i. Duress.**

In Taylor's appellate brief on his duress claim, the only legal authority cited addresses a sentencing court's abuse of discretion by not considering a relevant factor that should have received significant weight. *See State v. Juste*, 939 N.W.2d

664, 677 (Iowa Ct. App. 2019) (recognizing that appellants are required to cite to authority supporting their arguments). Taylor then transposes that legal theory to his argument that the PCR court failed to consider his claim that his severe mental health and psychological struggles impacted his decision to plead guilty. Missing is the connection between those arguments concerning the court's duty and the argument over how trial counsel was ineffective. At best, Taylor briefly comments that trial counsel "denied being aware that Taylor felt pressured to accept a guilty plea to get out of jail."

So, we turn to trial counsel's testimony, presented by way of a deposition exhibit. Taylor's counsel stated he knew Taylor, having represented him for "over a decade." Trial counsel remembered Taylor's goals for resolving the criminal cases and summarized:

> But I also know very early on [Taylor] had mentioned that he wanted to see about getting into drug treatment and he wanted out of jail right away. I know just from knowing [Taylor] personally and through other cases that I don't know how recent to this it was, but he had suffered a gunshot injury, and so that was a bit of an issue for him and being able to get medical care and not being in the jail where COVID was certainly a concern.
> So he wanted to get out of jail as quickly as possible and into a treatment center or something like that. So that was kind of a dual goal there. And so we certainly attacked both of those.

And as to any duress or pressure to enter a plea, trial counsel said, "No," adding:

> I was able to review the evidence and talk to him about the evidence, and once we talked about both some strengths and weaknesses that we saw, and this plea offer was made to him whereby he got out I think right away, if I remember right, and then had a chance to go to Salvation Army and do inpatient and participate in that program, it was a plea deal he very much wanted.

Knowing that Taylor was normally anxious when in jail, trial counsel did not believe that the time Taylor was in jail with these charges pending was any different

than other times, except for the "element of COVID." Then, trial counsel detailed his discussions related to the plea agreement, the consequences, and Taylor's motivation to accept the plea agreement. None of which supported Taylor's version that he was under significant duress and was coerced to agree to the plea terms.

At the risk of making arguments that Taylor did not make, we consider that Taylor's challenge may be that his decision to plead guilty was not voluntary, thus he was not afforded due process. "Due process . . . requires that a defendant enter a guilty plea voluntarily and intelligently." *State v. Kress*, 636 N.W.2d 12, 21 (Iowa 2001). Taylor argues that his plea was involuntarily made because circumstances surrounding his physical and mental health that made him accept a plea agreement to get out of jail. At the PCR hearing, Taylor testified he had been shot seven days before being arrested and transported to the Polk County jail. He spent almost one month in jail before he pled guilty. And while Taylor testified about his injuries from being shot and his perception of his mental health, there was no evidence of what mental-health diagnosis even impacted his ability to understand the plea agreement. What we have is this exchange during the PCR hearing where Taylor was asked: "Now, at the time that you pled guilty, you were satisfied with this deal; right?" To which Taylor answered: "Yes." Thus, the PCR court did not find Taylor's claim of "severe emotional distress" and the current testimony about his not wanting to plead guilty to be credible. Although we review constitutional issues de novo, we give deference to the district court's findings concerning witness credibility. *Sothman v. State*, 967 N.W.2d 512, 522, 526 (Iowa 2021).

We appreciate that Taylor might have been motivated to leave jail. So, we sympathize with Taylor while also recognizing the situation he found himself in was the result of his own actions. But claiming he acted under duress implies force by threat with no reasonable alternative. *See In re Marriage of Shanks*, 758 N.W.2d 506, 512 (Iowa 2008) (rejecting a claim of duress where wife executed the premarital agreement voluntarily knowing there were other alternatives available); *see also Duress*, *Black's Law Dictionary* (12th ed. 2024) ("Broadly, a threat of harm made to compel a person to do something against his or her will or judgment; esp., a wrongful threat made by one person to compel a manifestation of seeming assent to another person to a transaction without real volition."). Given trial counsel's knowledge of Taylor and the success of achieving the goals Taylor wanted, we do not find counsel breached any duty to Taylor or performed below the threshold of a reasonably competent attorney. This claim of ineffective assistance fails. *See Nguyen v. State*, 878 N.W.2d 744, 754 (Iowa 2016) (recognizing that if an applicant fails to establish either element, "we need not address the remaining element" (citation omitted)).

### ii. Inaccurate Advice.

Taylor claims that trial counsel erroneously assured him that his consecutive sentences would be changed to concurrent sentences if Taylor demonstrated good behavior and that he was confused about the habitual offender enhancement. Trial counsel testified that he did not tell Taylor he would receive concurrent sentences or could argue for concurrent sentences later. On top of that, trial counsel—an experienced defense attorney—testified:

> I do know my practice is, and I'm sure I did in this case, when we have written guilty pleas, which these were, I read them pretty much line for line to the client. I go through all the rights, go through the maximum and minimum penalties, go through the plea agreement so they know it. It's also in bold in case they choose to read it. But I read it to them and answer any questions they have, and we go through each one of the forms.

Whether the advice constitutes ineffective assistance of counsel turns on whether trial counsel gave incorrect advice to Taylor and whether Taylor would not have entered into the plea agreement but for that inaccurate advice. *See Castro*, 795 N.W.2d at 793.

Here again, the PCR court found trial counsel's testimony credible concerning his version of the advice given to Taylor and the conversation surrounding how the sentences would run. Although Taylor's testimony conflicted with his trial counsel's, the latter's testimony was detailed, specific, and consistent. And Taylor acknowledged in his testimony that the written plea agreement, which he reviewed and signed, confirmed that all sentences would run consecutively—all consistent with trial counsel's version. During the PCR trial, Taylor's articulation of the details of his sentence, the strategy behind plea agreements—"[U]sually people in jail get the habitual offender thrown out if you take the plea," and his repeated interactions with the criminal justice system lead us to believe that Taylor understood the plea agreement at the time of signing. Taylor has not convinced us he entered this plea agreement involuntarily or under duress or that he would not have taken this plea arrangement, but for trial counsel's alleged inaccurate advice. Taylor's convictions carried the potential for a large sentence, and his choice to seek treatment, have the sentence suspended, and remain on probation was both what he sought and what he got. Taylor made an "informed, self-

determined choice." *See State v. Weitzel*, 905 N.W.2d 397, 411 (Iowa 2017) (citation omitted).

Thus, as to Taylor's claim of ineffective assistance of trial counsel, he has failed to overcome the presumption that counsel performed as a reasonably competent attorney when advising him. *See Ledezma v. State,* 626 N.W.2d 134, 142 (Iowa 2001). Given that finding, we decline to address the prejudice prong. *See Nguyen*, 878 N.W.2d at 754.

## B. Abuse of Discretion in Revoking Probation.

"[P]robation revocation can be challenged only by application for [PCR]." *State v. Allen*, 402 N.W.2d 438, 441 (Iowa 1987). Taylor complains that the PCR court "effectively rubberstamp[ed] a decision that failed to consider all of the significant, relevant factors." He points to mitigating factors such as his mental health, harm to his family because he could not care for his mother, and his claim he left treatment because of his medical condition; he argues that neither the probation-revocation court nor the PCR court considered those as mitigating factors. His challenge is that the probation-revocation court abused its discretion when it failed to consider these mitigating factors when it revoked his probation.

In a probation-revocation matter, the court applies a "straightforward two-step analysis." *Covel*, 925 N.W.2d at 187. In the present case, Taylor does not dispute the first step. *See id.* ("The first step is determining whether the person has acted in violation of one or more conditions of his or her probation."). But, as to the second step involving "whether the person should be committed to prison or whether the court should take other steps to protect society and improve changes of rehabilitation," Taylor argues that the court failed to consider "significant

evidence of mitigating factors" when deciding to revoke his probation and, as a result, abused its discretion. *Id.* at 187–88. We find this claim meritless, consistent with the PCR court. In probation revocation matters, the court has broad discretion. *Id.* at 188. Here, not only was the sentence within statutory guidelines, but as noted, the court reviewed several factors before deciding to revoke Taylor's probation and require him to serve the originally imposed sentence, including factors Taylor argued were not considered. These considerations included Taylor's "family circumstances" and "mental health and substance abuse history and treatment options available in the community." Thus, the decision to revoke Taylor's probation and require him to serve the originally imposed sentence was within the court's discretion. We will not disturb it on appeal.

## IV. Conclusion.

We affirm the denial of Taylor's application for PCR.

**AFFIRMED.**